

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| GLADYS C. THORNTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: CV507-073 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge G. William Davenport ("ALJ" or "ALJ Davenport"), denying her claim for Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for a proper determination of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff filed for Disability Insurance Benefits on March 6, 2003. Plaintiff protectively applied for Supplemental Security Income ("SSI") payments on April 28, 2004. (Tr. at 15). Plaintiff alleges that she became disabled on December 31, 1992, due to bi-polar disorder, manic depressive illness, liver disease, gout, spastic bowel, and concentration problems. (Tr. at 16). After her claim was denied initially, and on reconsideration, Plaintiff filed a timely request for a hearing. On December 1, 2004, ALJ Davenport held a video hearing. Plaintiff appeared and testified in Waycross, Georgia,

and the ALJ presided over the hearing in Savannah, Georgia. William Sabo, a vocational expert, also appeared and testified at the hearing. Subsequent to the hearing, ALJ Davenport requested an internal consultative examination and a psychological consultative examination. After receipt of these two consultative examinations, a supplemental videoconference hearing was held on August 17, 2005. Plaintiff appeared and testified in Waycross, Georgia, while Jackson C. McKay, a vocational expert, and the ALJ appeared in Savannah, Georgia. (Tr. at 15).[1] The Appeals Council denied Plaintiff's request for review of the ALJ's denial of benefits and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 5-7).

Plaintiff, born on December 16, 1947, was fifty-eight (58) years old when ALJ Davenport issued his decision. (Tr. at 132). She has a high school education. She has past relevant work as a teacher's aide. (Tr. at 16).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the plaintiff is not engaged in such activity, then the second inquiry asks whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is not "severe," then

---

[1] At the August 17, 2005, hearing, Plaintiff indicated that she was no longer pursuing her SSI claim because she received $56,000.00 out of her ex-husband's 401(K) pension plan as of her July 2004 divorce. (Tr. at 15).

disability benefits are denied. Yuckert, 482 U.S. at 141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, subpt. P. App. 1; Yuckert, 482 U.S. at 141. If the impairment meets or equals one of the listed impairments, then the plaintiff is presumed disabled. Id. If the impairment does not meet or equal one of the listed impairments, then the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing her past relevant work. Id. If the claimant is unable to perform her past relevant work, then the final step of the evaluation process determines whether she is able to perform other work in the national economy, considering her age, education, and work experience. Yuckert, 482 U.S. at 142. Disability benefits will be awarded only if the claimant is unable to perform other work. Id.

In the case *sub judice*, the ALJ followed the sequential process to determine that Plaintiff has not engaged in substantial gainful employment since December 31, 1992. He found that Plaintiff did not have any impairment or impairments for the period of December 31, 1992, through December 31, 1997, that significantly limited her ability to perform basic work-related activities. ALJ Davenport further found that Plaintiff did not have a "severe" impairment. The ALJ finally found that Plaintiff was not disabled within the meaning of the statute. ALJ Davenport noted that Plaintiff was not pursuing her SSI claim. (Tr. at 32).

## ISSUES PRESENTED

1) Whether the ALJ properly discredited a treating physician's medical opinion regarding Plaintiff;

2) Whether the ALJ erred in not utilizing a medical advisor to help determine the onset date of a disability with a non-traumatic origin; and

3) Whether the ALJ erred in asking the vocational expert only one question.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla, but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the

appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I. **The ALJ properly discounted Dr. Barbara Davanzo's medical opinion.**

Plaintiff contends that the medical opinion of a treating physician must be given substantial weight unless good cause is shown to the contrary. Plaintiff further contends that when the ALJ elects to disregard the opinion of a treating physician, he must clearly articulate the reasons for doing so. Plaintiff asserts that when the ALJ has improperly refuted the treating physician's opinion, it should be accepted as a matter of law as true. Plaintiff further asserts that when Dr. Davanzo's opinions are accepted as true, she is entitled to disability benefits. (Doc. No. 16, pp. 9-10).

Defendant contends that the ALJ provided an express rationale for rejecting Dr. Davanzo's retrospective opinion when he stated that Dr. Davanzo was not personally familiar with Plaintiff's condition during the relevant time period and that Dr. Davanzo failed to point to any evidence in the older medical records which supported her opinion. Defendant further contends that Dr. Davanzo's assessment of Plaintiff is not supported by contemporaneous medical records for the relevant time period. (Doc. No. 22, pp. 6-7).

It is well-established that the opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause" exists when: (1) the treating physician's opinion is not supported by the record; (2) the record supports a finding inconsistent

with the treating physician's opinion; or (3) the treating physician's opinion is conclusory or inconsistent with his own medical records. Id. at 1241. "The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." Edwards v. Sullivan, 937 F. 2d 580, 583 (11th Cir. 1991). When the ALJ rejects the opinion of the treating physician, he must specify that he is doing so and must articulate a reason for not giving the opinion weight. MacGregor v. Bowen, 786 F. 2d 1050, 1053 (11th Cir. 1986). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz v. Bowen, 825 F. 2d 278, 279 (11th Cir. 1987). Additionally, the "ultimate conclusion" that a plaintiff "is disabled is an opinion on an issue reserved for the Commissioner and, as such, is not entitled to controlling weight." Walker v. Barnhart, 158 Fed. Appx. 534, 535 (5th Cir. 2005). "A statement by a medical source" that a plaintiff is "'disabled' or 'unable to work' does not mean" the Commissioner "will determine that [a plaintiff is] disabled." 20 C.F.R. § 404.1527(e)(1).

"A physician's retrospective diagnosis is a medical opinion of the claimant's impairments which relates back to the covered period." Krueger v. Astrue, 2008 WL 596780, at *10 (M.D. Fla. 2008) (citing Garvey v. Astrue, 2007 WL 4403525, at *7 (N.D. Fla. 2007)). "A retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligible period." Id. This, it would seem, is simply another way of saying that the opinion of a treating physician need not be given considerable weight if the opinion is inconsistent with, or not supported by, the contemporaneous medical records. This does not alter the manner in which the opinion of a treating physician is to be considered. The Eleventh Circuit is especially clear that

the ALJ must point to substantial evidence in the record to discount the opinion of a treating physician, whether retrospective, contemporary, or prospective. Id. "Courts have found that even if the treating physician's initial treatment was not until after the last date insured, the ALJ must discount the physician's retrospective opinion." Krueger, at *7.

ALJ Davenport noted that Dr. Clarence M. Johnson treated Plaintiff for mental health problems from December 6, 1993, until August 21, 2001. (Tr. at 24). The ALJ remarked that Dr. Barbara Davanzo began treating Plaintiff for mental health issues in October of 2001. The ALJ noted that Dr. Davanzo completed a medical source statement of Plaintiff's ability to do work related-activities (mental) in 2004. (Tr. at 26). ALJ Davenport observed that Dr. Davanzo opined that Plaintiff was delusional with psychotic symptoms, required anti-psychotic medications, and did not respond appropriately in a work environment. Dr. Davanzo further opined that Plaintiff had extreme limitations in responding appropriately to changes in a work setting and in her ability to interact appropriately with the public, supervisors, and co-workers. ALJ Davenport noted that Dr. Davanzo indicated by circling yes on a letter presented to her by Plaintiff's representative that the severity of Plaintiff's condition, as she found it on August 19, 2004, existed on, or before, December 31, 1997. (Tr. at 27).

The ALJ observed that Dr. Clare Rubun, a State Agency consulting psychologist, completed a psychiatric review technique form and determined that there was insufficient evidence to make a determination regarding Plaintiff's condition prior to her last date insured. (Tr. at 30). Dr. Rubun stated, "Although manic depressive

disorder is one of the diagnoses in MER pertaining to this time period there is no MER covering P[atient's] treatment functioning or meds." (Tr. at 209).

The ALJ remarked that Plaintiff testified that she suffered from the same mental health problems prior to her last date insured as she did in 2004. (Tr. at 31). However, with regard to Plaintiff's credibility, ALJ Davenport noted that Plaintiff perjured herself when she stated she never had a drug abuse problem. The ALJ compared Plaintiff's statement that she never abused drugs to her positive urine drug screen, detailed admission of SOMA and codeine addictions to her psychiatrist, and post-hearing admissions of alcohol, codeine, and marijuana abuse to the psychological consultative examiner. The ALJ remarked that Plaintiff's refusal to admit the obvious destroyed her overall credibility. (Tr. at 31). ALJ Davenport also noted that Plaintiff testified that she kept a diary priory to her last date insured and is currently writing a book. The ALJ remarked that it is a major discrepancy that she could be so dysfunctional and yet have a manuscript in progress. (Tr. at 30).

ALJ Davenport observed that there was very little proven prior to Plaintiff's last date insured regarding her mental impairments. The ALJ further observed that the State Agency stated that Plaintiff did not have enough going on, as of 1997, for them to rate. The ALJ emphasized that Plaintiff had no year-long durational symptoms or loss shown. ALJ Davenport noted that the vocational expert testified that if a hypothetical claimant matching Plaintiff's conditions needed to take psychotropic medications, the hypothetical claimant could do Plaintiff's prior work, or any work, on medications without side effects. (Tr. at 31).

The ALJ observed that, on cross examination, Plaintiff's representative argued that the treating psychiatrist opined that Plaintiff could not perform any work. (Tr. at 31). ALJ Davenport responded:

> The undersigned finds this irrelevant because claimant's date last insured was 1997 and this psychiatrist didn't see her then, only as of 2002. He inherited her old records, but never references them, or gives us any clues as to the onset of all these symptoms and problems... So, the treating psychiatrist's view today seems pretty much irrelevant to the period at issue, which ended December 31, 1997.

(Tr. at 32). The ALJ concluded that Plaintiff "has not met her burden of proof as there are no findings in the record which show that a severe impairment existed at any time from her earliest possible alleged onset date, December 31, 1992 through her date last insured December 31, 1997." (Tr. at 32). The ALJ found that Plaintiff did not have any impairment or impairments prior to December 31, 1997, that would significantly limit her ability to perform basic work-related activities. Thus, the ALJ found that Plaintiff did not have a "severe" impairment. ALJ Davenport further found that Plaintiff was not disabled within the meaning of the statute prior to her last date insured. (Tr. at 32).

ALJ Davenport properly discounted Dr. Davanzo's opinion. The ALJ appeared to reject Dr. Davanzo's medical opinion, in part, because she did not treat Plaintiff prior to her date last insured. This would clearly be error if it was the ALJ's only reason for discounting Dr. Davanzo's opinion because courts must discount a treating physician's opinion, even if the physician's initial treatment was not until after the date last insured. See Krueger at *7. However, ALJ Davenport articulated "good cause" for discounting Dr. Davanzo's medical opinion when he stated she "inherited her old records, but never references them, or gives us any clue as to the onset of all these symptoms and problems." (Tr. At 32). A treating physician's opinion may be discounted when it is not

AO 72A
(Rev. 8/82)

accompanied by objective medical evidence or is conclusory. Edwards, 937 F. 2d at 583. Dr. Davanzo determined in a 2004 medical source statement of ability to do work-related activities (mental) that Plaintiff would not be able to behave appropriately in a workplace. (Tr. At 638-639). However, that opinion only related to Plaintiff's condition at the time the medical source statement was produced, which was well after her last date insured. Plaintiff's attorney sent Dr. Davanzo a letter addressing the severity of Plaintiff's condition prior to her last date insured. Dr. Davanzo indicated, by simply circling yes on the letter and returning it, that Plaintiff's condition was as severe prior to her date last insured as it was in 2004. Dr. Davanzo did not reference any evidence in Plaintiff's medical records or support her opinion in any way. Thus, Dr. Davanzo's opinion was properly discounted by the ALJ because it was conclusory and was not accompanied by objective medical evidence.

**II. The ALJ did not err by failing to utilize a medical advisor in this case.**

Plaintiff contends that the ALJ erred because Social Security Ruling 83-20 requires that the Commissioner utilize a medical advisor to help determine the onset date when disability is of a non-traumatic origin. (Doc. No. 16, p. 10). Defendant asserts that the ALJ has no obligation to obtain medical expert testimony as to the severity of an impairment when the existing record is adequate to make a decision. Defendant further asserts that Social Security Ruling 83-20 does not require testimony of a medical expert when the record indicates that any disability arose well after a claimant's insured status had expired. (Doc. No. 22, p. 7-8).

Factors relevant to the determination of disability onset include the individual's allegation, work history, and medical evidence. Social Security Ruling 83-20. The

medical evidence serves as the primary element in the onset determination. Id. The individual's allegation, or the date of work stoppage, is significant in determining onset only if it is consistent with the severity of the conditions shown by the medical evidence. Id. The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe so as to prevent the individual from engaging in gainful activity for a continuous period of at least 12 months. Id. "The most logical interpretation of SSR 83-20 is to apply it to situations where the ALJ is called upon to make a retroactive inference regarding disability involving a slowly progressive impairment, and the medical evidence during the insured period is inadequate or ambiguous." McManus v. Barnhart, 2004 WL 3316303, *6 (M.D. Fla. 2004). Social Security Ruling 83-20 does not require the use of a medical expert when the record indicates that any disability arose well after a claimant's insured status had expired. Roland v. Astrue, 2008 WL 783590, *9 (N.D. Fla. 2008).

Here, there was adequate evidence for the ALJ to determine that Plaintiff's disability did not commence before her last date insured. ALJ Davenport observed that Dr. Johnson treated Plaintiff from December 1993 until August 2001. Plaintiff was described as stable in a September 1994 visit to Dr. Johnson. Plaintiff's affect was good in February 1995. (Tr. at 24). The ALJ remarked that while Plaintiff appeared to be suffering from some depression in May 1995, Dr. Johnson opined that Plaintiff's mental status was doing fairly well in October. The ALJ further remarked that a January 1996 progress note showed that Plaintiff was doing very well, her mental status was stable, her insight and judgment were good, there was no evidence of perceptual difficulty, and her affect was appropriate. ALJ Davenport noted that in May 1996, Dr.

Johnson found no evidence of any severe paranoia or depression, Plaintiff was doing well without any anti-psychotic medication, and her panic disorders were controlled. (Tr. at 25). The ALJ observed that Plaintiff looked good on a December 1996 mental status exam and that her affect was appropriate, her insight and judgment were good, there was no evidence of any severe mood swings, no delusions, and no evidence of perceptual difficulty. The ALJ further observed that Dr. Johnson opined that, "this is the best I have seen her in several years." (Tr. at 26). ALJ Davenport remarked that a March 1997 mental status exam revealed Plaintiff's affect as being a little down, but there was no evidence of any delusional content to her thinking. Dr. Johnson opined that Plaintiff was not showing any perceptual difficulties and she was doing well. The ALJ noted that Plaintiff appeared to have a panic breakthrough in a store in May 1997, but Plaintiff had good insight with no evidence of any psychosis and her depression was stabilized in June of that year. The ALJ observed that Plaintiff was doing real well in September 1997. The ALJ further observed that in December 1997, Plaintiff was having some difficulty with ideas of reference and little paranoid ideations. Dr. Johnson remarked that this was a deterioration that he had not seen in a long time and he gave her some additional medication. ALJ Davenport noted that Plaintiff telephoned Dr. Johnson in January 1998 and stated that she was feeling greater than she had felt over the last years. (Tr. at 26). The ALJ's judgment had a "legitimate medical basis" and it was not unreasonable for him to find that it was clear, and not ambiguous, that Plaintiff was not disabled for a continuous period of at least 12 months prior to her date last insured. As there was adequate medical evidence supporting the conclusion that Plaintiff's disability arose after her insured status had expired, the ALJ was not required

to call in a medical expert to help determine the onset date of her disability. Accordingly, ALJ Davenport's failure to utilize a medical expert to ascertain the onset date of Plaintiff's disability was not error.

### III. ALJ Davenport did not err in questioning the vocational expert.

Plaintiff asserts that the ALJ erred by not encompassing all of her limitations in his hypothetical to the vocational expert. Plaintiff further asserts that ALJ Davenport indicated that Plaintiff's only work limitation was that she took psychotropic medications that had no side effects. Plaintiff contends that ALJ Davenport erred by using the vocational expert's response in deciding that she was not disabled prior to her date last insured. (Doc. No. 16, p. 10). Defendant asserts that the ALJ properly questioned the vocational expert because he had a sufficient basis for rejecting the limitations suggested by Dr. Davanzo. (Doc. No. 22, p. 7).

The hypothetical questions that the ALJ poses to the vocational expert must comprehensively describe the claimant's impairments. Pendley v. Heckler, 767 F. 2d 1561, 1562 (11th Cir. 1985). However, the hypothetical need only include the impairments which the ALJ accepts as true. McKay v. Apfel, 1999 WL 1335578, *7 (M.D. Ala. 1999).

There was substantial evidence supporting ALJ Davenport's conclusion that Plaintiff's only limitation prior to her last date insured was that she was prescribed psychotropic medications, which were without side effects. The record does not contain evidence that Plaintiff suffered from an impairment sufficiently severe so as to prevent her from engaging in gainful activity for a continuous period of at least twelve months.

As such, the ALJ's questioning of the vocational expert was appropriate because his hypothetical included the only impairment he accepted as true.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 21st day of January, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE